**Opinion filed December 3, 2015**



# In The

# Eleventh Court of Appeals

_____

## No. 11-15-00131-CV

_____

## IN THE INTEREST OF E.R.W. AND C.W., CHILDREN

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. C45806**

## M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of the parents of E.R.W. and C.W. The mother timely appealed; the father did not file an appeal. On appeal, the mother presents five issues in which she challenges the sufficiency of the evidence. We affirm.

*Termination Standards and Findings*

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2015). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine

whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001(b). In this case, the trial court found that Appellant committed five of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), (O), and (P). Appellant does not challenge the finding made pursuant to Section 161.001(1)(O). Accordingly, we need not address Appellant's first four issues, in which she challenges the findings made pursuant to subsections (D), (E), (N), and (P) because the unchallenged finding under subsection (O) is sufficient to support termination as long as termination is in the children's best interest. *See id.* § 161.001(b). The trial court found that termination was in the children's best interest. *See id.* § 161.001(b)(2).

*Analysis as to Best Interest*

Appellant challenges the best interest finding in her fifth issue. She asserts that the evidence is legally and factually insufficient to overcome the presumption that it is in the children's best interest to maintain the parent-child relationship. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child

now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The Department of Family and Protective Services became involved with the children in this case in March 2014 when E.R.W. was three and one-half years old and C.W. was two and one-half years old. The Department received a report regarding methamphetamine use and distribution in the home, as well as concerns about ongoing domestic violence between the parents. Jeremiah Nichols, a night response worker for the Department, responded to the report. Appellant admitted to Nichols that she had used methamphetamine, and Appellant tested positive at that time. The children's father also admitted to methamphetamine use and stated that the parents had used methamphetamine together while the children were in the care of the parents.

Nichols testified that the house was "a bit dirty" and that the children smelled "very bad" and were sleeping on the living room floor. The clothes that Appellant brought out for the children also smelled. The children did not have any visible marks or bruises on them.

Terri Ervin, a Department employee, received the case from Nichols and contacted the parents the next day. Appellant admitted to Ervin that Appellant had

used methamphetamine while the children were in the house. Ervin testified that Appellant "definitely has a history" of substance abuse.

Amanda Ayers, also a Department employee, testified that Appellant did not comply with the court-ordered services; she failed to get an evaluation by MHMR, failed to go to counseling, failed to maintain stable housing, did not have a job, had been convicted of "possession," was arrested for a probation violation, and had not visited the children in over ten months. Ayers testified that the Department had made reasonable efforts to return the children to Appellant but that Appellant had not demonstrated that she could provide the children with a safe environment. Ayers believed that termination of both parents' parental rights would be in the best interest of the children.

At the time of the final termination hearing in this case, the children were in a foster home that Ayers said was an appropriate placement. The children had been in that same foster home since they were removed from the parents' care. Ayers testified that the children had bonded with their foster family and that, at the time of the hearing, there were no other placement options available for the children. Ayers described the placement as an adoptive placement for the children. Ayers stated that, if the parents' rights were terminated, the children would be able to grow up in a stable home and would not have to worry about being fed or having a place to live.

The foster father testified that the children initially had a lot of behavioral problems but, by the time of the final hearing, were doing well. When the children first arrived at the foster parents' home, E.R.W. would "smear her feces on the walls in the bathroom, then lick her fingers." She would also hit C.W. and her foster brother. The foster father testified that E.R.W. no longer hits anybody at all. The foster father referred to the children as "[c]ompletely different kids." The foster father testified that he and his wife would like to adopt the children; that the

4

foster parents and their extended family had "lots of love to give"; and that, in his opinion, termination of the parents' rights would be in the best interest of the children.

Based upon the *Holley* factors and the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. The trial court could reasonably have formed a firm belief or conviction that it would be in the children's best interest for Appellant's parental rights to be terminated. We hold that the evidence is both legally and factually sufficient to support the trial court's best interest finding. Appellant's fifth issue is overruled.

*This Court's Ruling*

We affirm the trial court's order of termination.

MIKE WILLSON

JUSTICE

December 3, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.